**In re SUNRISE SECURITIES LITIGATION.**

**This Document Relates to All Actions.**

**M.D.L. No. 655.**

United States District Court, E.D. Pennsylvania.

Feb. 10, 1989.

See also 698 F.Supp. 1256.

Berger & Montague, P.C., Philadelphia, Pa., Greenfield & Chimicles, Haverford, Pa., Squire, Sanders & Dempsey, for plaintiffs.

Dechert, Price & Rhoads, Philadelphia, Pa., for defendants.

## MEMORANDUM

O'NEILL, District Judge.

At present there are some 29 discovery motions outstanding in this litigation.[1]

Most of the motions raise complex issues of privilege, including the applicability of work-product, attorney-client, grand jury and joint defense privileges. Parties have withheld thousands of documents as privileged, many on the basis of more than one privilege. The privilege list of one party, Blank, Rome, Comiskey & McCauley, is 471 pages long. Under these circumstances, the question arises whether it would be advisable for this Court to refer some or all of the discovery motions to a special master.[2]

Under F.R.C.P. Rule 53(b), reference to a special master must be "the exception and not the rule." The rule permits appointment of special masters in actions to be tried by a jury "only when the issues are complicated," and in actions to be tried without a jury, "save in matters of account and of difficult computation of damages ... only upon a showing that some exceptional condition requires it."

In interpreting this rule, courts have distinguished between dispositive matters and discovery or other nondispositive motions or issues, requiring a much greater showing to warrant referral of dispositive matters than for discovery matters. For example, the Court of Appeals for the Sixth Circuit has stated that "even though the reference of nondispositive discovery matters may be justified in some nonjury cases, it will be the extremely rare case where the reference of a dispositive matter (be it a pretrial motion for summary judgment or the actual trial) will be appropriate." *In re U.S.,* 816 F.2d 1083, 1091 (6th Cir.1987). Similarly, in *In re Armco, Inc.,* 770 F.2d 103, 105 (8th Cir.1985), the Court of Appeals for the Eighth Circuit held that, although the district court had erred in granting a master authority to preside over a non-jury trial on the merits, it had "acted properly in granting the master the broad authority to supervise and conduct pretrial

---

1. This figure does not include notices by parties that they join in previously filed motions of other parties.

2. This Court's power to appoint a special master under F.R.C.P. Rule 53 "is not dependent on consent of the parties and the court may act on its own motion." Wright & Miller, Federal Practice and Procedure: Civil § 2603, at 781.

matters, including discovery activity." [3]

Thus, despite courts' reluctance to refer dispositive matters to a master, "use of a special master to supervise discovery may still be appropriate and useful in unusual cases." Wright & Miller, Federal Practice and Procedure: Civil § 2605, at 790–791. *See National Association of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 560 (N.D.Cal.1987) ("Discovery is an area where special masters are frequently appointed either because the problems are complicated or the parties are recalcitrant."); *Fisher v. Harris, Upham & Co., Inc.*, 61 F.R.D. 447, 449 (S.D.N.Y.1973), *appeal dismissed*, 516 F.2d 896 (2d Cir. 1975), and cases cited therein. In the extensive and complex AT & T antitrust litigation, for example, the district court referred to two special masters, among other matters, "responsibility for ruling on all claims of work product and other privilege asserted during the course of discovery." *United States v. American Telephone & Telegraph*, 461 F.Supp. 1314, 1348 (D.D.C. 1978).

The Manual for Complex Litigation states that, although the judge ordinarily should supervise complex litigation directly rather than refer it to a master, "referral to a magistrate or master may be useful in some situations. For example, ... [r]eferrals sometimes have been found to be useful in handling certain discovery problems (for example, claims of privilege and protective orders)." Manual for Complex Litigation, Second, § 20.14. Similarly, when discussing patent cases, the Manual recommends that "[a]t the initial conference the court should ascertain the extent to which discovery will be sought of matters that may be protected by the attorney-client privilege or work product doctrine and, if so, whether disclosure will be resisted. Use of a special master may be warranted if such disputes will be extensive and cannot be resolved by considering a few specimen documents." Manual for Complex Litigation, Second, § 33.64.

In the present litigation, I believe that the numerous complex privilege issues raised in the outstanding motions warrant appointment of a special master. The parties' interrelationships and changing capacities at various times make privilege analysis exceptionally complicated here. For example, several parties were both officials of Sunrise and partners of Blank, Rome. Review of individual documents authored by these parties may be necessary to determine whether they were written as legal advice from Blank, Rome, or as internal Sunrise memoranda. Similarly, documents prepared by Blank, Rome on behalf of Sunrise officials may need to be examined to determine whether they concern Sunrise or personal affairs. A special master is best situated to conduct the detailed, close analysis necessary to ferret out which documents are privileged. I therefore will order that counsel confer and agree upon a list of potential candidates for a special master to whom review of individual documents will be referred.

It is my present intention to decide the legal issues in the discovery motions, and to refer factual determinations to the master. Because resolution of the legal issues will determine which documents the special master must review,[4] I will defer delineat-

---

**3.** *See also La Buy v. Howes Leather Co.*, 352 U.S. 249, 259, 77 S.Ct. 309, 315, 1 L.Ed.2d 290 (1957) (holding that docket congestion and "unusual complexity of issues of both fact and law" do not constitute conditions exceptional enough to justify reference of the trial of a non-jury matter to a master).

**4.** In a status conference I held with counsel on October 13, 1988 concerning outstanding motions (including non-discovery motions), I informed them that I was considering appointment of a special master to handle some or all of the discovery motions. I requested that the parties confer and attempt to identify the outstanding motions which presented purely legal issues, those which were likely to require detailed examination of documents for resolution, and those which should be given priority. In their correspondence, the parties have provided conflicting responses, apparently agreeing that at least some issues in the outstanding motions do not require detailed examination of documents and should be given priority, but disagreeing as to which issues fall into that category.

In their letter of December 30, 1988, plaintiffs' lead counsel and defense liason counsel identified 15 motions which they contended "can be resolved, at least in the first instance, on legal

ing the scope of the master's authority until after the parties have submitted their list of candidates.

## ORDER

AND NOW, this 10th day of February, 1989, it is hereby ORDERED that plaintiffs' lead counsel and defendants' liason counsel confer with other counsel and jointly submit to this Court, within a reasonable time, a list of prospective candidates to serve as a special master for discovery in this case in accordance with F.R.C.P. Rule 53. The special master's duties and powers will be delineated by further order of this Court after counsel have submitted the list of candidates.

---

principles without reference to the documents themselves and without referral to a master," including two motions to compel discovery from Blank, Rome. Counsel for Blank, Rome, in a letter of January 13, 1989, argued that resolution of a number of the privilege issues in the motions to compel Blank, Rome may require examination of individual documents. (These same privilege issues arise in other out-

standing discovery motions as well, including some of the 15 motions identified in the December 30 letter.) Blank, Rome also argued that all of the motions to compel discovery of Blank, Rome should be considered at the same time. Counsel for the outside directors responded on January 26, 1989, disagreeing with Blank, Rome's contentions concerning most of the privilege issues.